IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL L. ALEJANDRO-MARTINEZ, et al.<br><br>Plaintiffs<br><br>vs<br><br>ENG. JOSE F. ORTIZ-VAZQUEZ, in his personal capacity and as Director of Puerto Rico Aqueduct and Sewer Authority, his wife JANE DOE and their conjugal partnership;; EUFEMIO TOUCET, in his personal capacity and as SubDirector of Puerto Rico Aqueduct and Sewer Authority, his wife JANE DOE and their conjugal partnership; ENG. PABLO REYES-BONILLA, in his personal capacity and as HOSO's Director Engineer, his wife JANE DOE and their conjugal partnership; PUERTO RICO AQUEDUCT AND SEWER AUTHORITY; ONDEO DE PUERTO RICO, INC.; COMPAÑIA DE AGUAS DE PUERTO RICO, INC.; CORPORACION DEL FONDO DEL SEGURO DEL ESTADO (CFSE); INSURANCE COMPANIES A, B, C; DR. ANGEL ROMAN-FRANCO, in his personal capacity and as an employee of the CFSE, his wife JANE DOE and their conjugal partnership; DR. IRIS OTERO, in her personal capacity and as Medical Director of the CFSE, her husband JOHN DOE and their conjugal partnership; DR. JOHN DOE, in his personal capacity and as an employee of the CFSE, his wife JANE DOE and their conjugal partnership; DR. JANE DOE, in her personal capacity and as an employee of the CFSE, her husband JOHN DOE and their conjugal partnership; INSURANCE COMPANIES X, Y, Z<br><br>Defendants | CIVIL 10-1541CCC |

**STATEMENT OF REASONS IN SUPPORT OF ORDER
DATED SEPTEMBER 27, 2011 (DOCKET ENTRY 97)
WHICH GRANTED DEFENDANTS' MOTIONS TO DISMISS**

On September 27, 2011, after duly considering the various motions to dismiss filed by defendants in this case (**docket entries 43**, **44, 46, 47, 48, 58, 59, 60, 68, 75 and 81**) and plaintiffs' responses to said motions (docket entries 64, 71 and 84), the Court granted

CIVIL 10-1541CCC                                         2

the dispositive motions and dismissed plaintiffs' federal causes of action under 42 U.S.C. § 1983, the RICO Act (18 U.S.C. §§ 1961 et. seq.), and the Family and Medical Leave Act (FMLA) (29 U.S.C. §§ 2601 et. seq.) for their failure to state a claim. It also dismissed, albeit without prejudice, the supplemental claims brought under the laws of the Commonwealth. We now state the reasons for said ruling.

### A.    FACTUAL BACKGROUND

The relevant facts are narrated in the rambling allegations of the Complaint (docket entry 1). Plaintiffs are sixty-seven current and former employees of the Puerto Rico Aqueduct and Sewer Authority (PRASA) who claimed to have been exposed to a series of toxic metals while working for said agency, mainly aluminum, which allegedly produced in them a variety of medical conditions. Most of them aver having sought treatment from defendant Corporación del Fondo del Seguro del Estado (CFSE) for the ailments allegedly caused by said chemicals, but that it was prematurely terminated. Others affirm that they were intentionally prevented from obtaining any treatment from the CFSE. They all allege that the premature termination of their treatment, or the refusal to allow them to obtain said treatment, was the result of a pattern of racketeering activity by the assorted defendants: PRASA, its Executive Director José F. Ortiz-Vázquez, its Executive Sub-Director Eufemio Toucet and its Director for the Hygiene and Occupational Safety Office (HOSO), Pablo Reyes-Bonilla (Reyes); the CFSE and its Medical Director Dr. Iris Otero; ONDEO de Puerto Rico; Compañía de Aguas de Puerto Rico, and Dr. Angel Román-Franco. Plaintiffs also alleged being entitled, pursuant to their collective bargaining agreement and PRASA's internal regulations, to paid medical leave upon being diagnosed with a work-related condition, which benefit they claim was similarly hindered by defendants through a pattern of racketeering activity. In essence, plaintiffs state that PRASA, through Reyes, pressured the CFSE to review the cases of PRASA employees on medical leave who alleged that they had been poisoned with aluminum and/or other metals and either terminate their treatment

CIVIL 10-1541CCC                                3

or not accept for treatment additional PRASA employees claiming a similar condition, with which the CFSE allegedly obliged. Plaintiffs claim that all these actions caused them damages, and request compensation for their pain and suffering, lost wages, loss of earning capacity, and past, current and future medical expenses.

### B.    CLAIM UNDER THE RICO ACT (18 U.S.C. §§ 1961 et. seq.)

The allegations pertaining to the claimed RICO violation are set forth at pages 39 and 40 of the Complaint. They state:

> 160.   All the preceding paragraphs are incorporated by reference herein.
>
> 161.   The purveyance of medical treatment to PRASA employees suffering symptoms related or which could or should have been related to aluminum poisoning has been conducted pursuant to a racketeering pattern by the co-defendants and constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).
>
> 162.   The CFSE has been conducted pursuant to a racketeering pattern by the codefendants and constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).
>
> 163.   The operations of the HOSO has been conducted pursuant to a racketeering pattern by the codefendants and constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).
>
> 164.   The Office of Human Resources of the PRASA has been conducted pursuant to a racketeering pattern by the codefendants and constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).
>
> 165.   The codefendants were fully aware that the CFSE determinations regarding the adjudication of relationship, termination, and all other determinations made by this entity would be sent or notified to the plaintiffs and the PRASA through the mail or telephone. The codefendants were also fully aware that these determinations contained false statements. Thus, the co-defendants violated 18 U.S.C. § 1341 and § 1343, as extended by § 1346, and thus constitutes a predicate racketeering act pursuant to 18 U.S.C. § 1961(1).
>
> 166.   The codefendants were fully aware that the employees of the PRASA were entitled to a period of sick (sic) and that all endeavors related to this are conducted through the use of the mails, and through the use of the telephone. The codefendants were also fully aware that these determinations contained false statements.  Thus, the codefendants violated 18 U.S.C. § 1341 and § 1343, as extended by § 1346, and this constitutes a predicate racketeering act pursuant to 18 U.S.C. § 1961(1).

CIVIL 10-1541CCC                                       4

> 167.   Additionally, the codefendants were fully aware that the plaintiffs had an entitlement to receive medical treatment services, and compensation from the CFSE for their workplace related aluminum poisoning, and the ensuing two-year period of paid sick leave from the PRASA and their actions admonishing the injured employees with criminal, civil and administrative sanctions for claiming their rights to treatment and paid leave inflicted wrongful fear upon them with the purpose of extorting him in violation of the Hobbs Act 18 U.S.C. § 1951 and this constitutes a predicate racketeering act pursuant to 18 U.S.C. § 1961(1).

All of these allegations refer only to §§ 1961(1) and (4), which define the terms "racketeering activity" and "enterprise" for purposes of the statute.  But section 1961 does not establish, by itself, what constitutes a prohibited activity under the RICO Act, a topic which is instead addressed by its § 1962.  In no uncertain terms, § 1962 lists three distinct substantive activities that are expressly prohibited by the law.  Nowhere in plaintiffs' complaint, however, do they categorize the actions purportedly carried out by defendants within one of the three categories enumerated in § 1962(a)(b) and (c).  This, by itself, fatally flaws their RICO claim.  Simply put, we do not have to craft for them the § 1962 claim which would allegedly entitle them to relief.

Even if were we to find that plaintiff sufficiently stated a claim by pleading enough facts to configure, as to specific defendants, any of the activities prohibited by § 1962, their RICO claims would still be legally deficient for failure to meet the pleading requirements of Fed. R. Civ. P. 9(b).  This is so because included among the definition of racketeering activity contained in § 1961 are violations to 18 U.S.C. § 1341, relating to mail fraud, and 18 U.S.C. § 1343, relating to wire fraud, which are the ones that plaintiffs identify as predicate acts at paragraph 165 of their complaint.  Courts have repeatedly held in RICO cases alleging mail fraud and wire fraud as the "predicate acts" that the underlying fraudulent activities must be pled with particularity, in light of the more stringent Rule 9(b) pleading requirements.  The prevailing standard was aptly explained by the Court of Appeals for the Second Circuit in Moore v. Painewebber, Inc., 189 F.3d 165, 173 (2nd Cir. 1998):

CIVIL 10-1541CCC                                5

> In the RICO context, Rule 9(b) calls for the complaint to "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992) (quoting Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989)). The plaintiffs must also "identify the purpose of the mailing within the defendant's fraudulent scheme." McLaughlin, 962 F.2d at 191. In addition, the plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent." San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 812 (2d Cir. 1996).

Hence, in accordance with Rule 9(b), plaintiffs alleging fraud must further "state the time, place and content of the false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud." United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks and citation omitted). See also Intex Recreation Corp. v. Team Worldwide Corp., 390 F. Supp. 2d 21, 24 (D.D.C. 2005) (stating that "[t]he particularity requirement of Rule 9(b) demands that the pleader specify what [fraudulent] statements were made and in what context, when they were made, who made them, and the manner in which the statements were misleading") (citation omitted); Haroco, Inc. v. Am. Nat'l Bank and Trust Co. of Chi., 747 F.2d 384, 405 (7th Cir. 1984) (finding that complaint satisfied the Rule 9(b) standard where it "adequately specified the transactions, the content of the allegedly false representations, and the identities of those involved"). Moreover, "[c]ourts have been particularly sensitive to [Rule 9(b)'s] pleading requirements in RICO cases in which the 'predicate acts' are mail fraud and wire fraud, and have further required specific allegations as to which defendant caused what to be mailed . . . and when and how each mailing . . . furthered the fraudulent scheme." Gotham Print, Inc. v. Am. Speedy Printing Ctrs., Inc., 863 F. Supp. 447, 458 (E.D. Mich. 1994) (citing cases) (emphases omitted).

There are simply no allegations in plaintiffs' complaint that would satisfy these demanding standards. Thus, plaintiffs have failed not only in properly pleading concrete facts that would give notice to defendants of the nature of their RICO claims, whether an

.
.

CIVIL 10-1541CCC                                          6

18 U.S.C. § 1962(a), (b) or (c) violation, but also in pleading with any specificity the alleged mail and wire fraud schemes.  Their RICO claim is, hence, doubly inadequate.  For that reason, defendants' motions seeking dismissal of the RICO claim were granted by the Court.

### C.    CONSTITUTIONAL VIOLATIONS

Plaintiffs alleged that defendants deprived them of their due process of law, and sought redress for said violation under 42 U.S.C. § 1983.  They grounded said violation in a series of actions allegedly committed by defendants which they listed at ¶ 168 through ¶ 178, and which can be summed up as a generalized failure to warn them about and protect them from the dangers and consequences of being exposed to toxic elements.

The constitutional guarantee of substantive due process functions to protect individuals from particularly offensive actions on the part of government officials. González-Droz v. González-Colón, --F.3d--, 2011 WL 4346673 (1st Cir. 2011).  The plaintiff bears the burden of showing that the challenged actions were "so egregious as to shock the conscience."  Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006).  To sink to this level, the challenged conduct must be "truly outrageous, uncivilized, and intolerable."  Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999).

None of the allegations in plaintiffs' complaint remotely approach the level of a substantive due process violation.  Instead, they partake of a run-of-the-mill tort case.  Since plaintiffs' allegations did not meet the "shocks the conciousness" standard, they failed to establish a plausible violation of their constitutional right to substantive due process.  For that reason, defendants' motions seeking dismissal of the constitutional claim were granted by the Court.

### D.    CLAIM UNDER THE FEDERAL MEDICAL LEAVE ACT (29 U.S.C. §§ 2601 et. seq.)

Plaintiffs premised their claim under the FMLA on defendants' alleged deprivation of their regulatory and contractual right to enjoy paid sick leave while being treated at the CFSE, when they purportedly impeded that medical treatment be provided for their

CIVIL 10-1541CCC                               7

metal-toxicity-induced ailments through that agency.  The FMLA, however, does not entitle plaintiffs to a specific type of leave.  Rather, the FMLA simply entitles plaintiff to unpaid leave.  See 29 U.S.C. § 2612 (providing for up to 12 weeks of unpaid leave, but allowing employers to require employees to use sick leave or personal leave).  As plaintiffs were not entitled to paid leave under the FMLA, their complaint failed to state any violation under said statute.  For that reason, defendants' motions seeking dismissal of the claim under the FMLA were granted by the Court.

      E.      **SUPPLEMENTAL CLAIMS UNDER THE LAWS OF THE COMMONWEALTH**

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."  Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).  Thus, once all of plaintiffs' federal causes of actions were axed by the Court for failure to state a claim, all the claims under the laws of the Commonwealth were also dismissed, but without prejudice.

    SO ORDERED.

    At San Juan, Puerto Rico, on October 11, 2011.

                                                    S/CARMEN CONSUELO CEREZO
                                                    United States District Judge